```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
UNITED STATES OF AMERICA,                                     :
                                                              :
        v.                                                    :
                                                              :
ANATOLY POTIK,                                                :
                                                              :
                                    Defendant.                :
                                                              :
------------------------------------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/26/17

**OPINION AND ORDER
REJECTING PLEA**

17 Cr. 232 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

Defendant Anatoly Potik wishes to enter a plea of guilty to Count One of the superseding information in this case, which charges him with misprision of felony in violation of 18 U.S.C. § 4. That statute provides, "Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both." 18 U.S.C. § 4. On August 21, 2017, a plea proceeding was held. Following Potik's allocution, I reserved decision on whether to accept Potik's plea of guilty because I was unsure whether there was a factual basis for the plea, as required by Rule 11(b)(3) of the Federal Rules of Criminal Procedure. For the reasons stated herein, I decline to accept Potik's plea.

## BACKGROUND

On January 22, 2016, the Government charged Potik by complaint with participating in a murder-for-hire scheme in violation of 18 U.S.C. § 1958. *See* 16 Mag. 486, Dkt. No. 1. The Government did not pursue this charge, however, and on June 8, 2016, the complaint was dismissed on the Government's motion. On June 7, 2016, the Government filed

an information charging Potik with conspiring to use extortionate means to collect extensions of credit in violation of 18 U.S.C. § 894.

On April 24, 2017, nearly a year later, the Government filed a superseding information charging Potik with one count of misprision of felony. The superseding information alleges as follows: "In or about Summer 2015, in the Eastern District of New York and elsewhere, Antoly Potik, the defendant, having knowledge of the actual commission of a felony cognizable by a court of the United States, to wit, a conspiracy to use extortionate means to collect and to attempt to collect extensions of credit, in violation of Title 18, United States Code, Section 894, knowingly did conceal the same, and did not as soon as possible make known the same to some judge or other person in civil or military authority under the United States." Dkt. No. 5. That same day, after consenting to proceed before a magistrate judge, Potik appeared before Magistrate Judge Peck to enter a plea of guilty. At that proceeding, Potik gave the following allocution:

> In the summer of 2015, in the Southern and Eastern Districts of New York, I became aware of individuals that were attempting to collect debt by extortionate means. The $20,000 debt was owed to me by the third party from prior business deals. The person who attempted to collect the debt did so after learning of the debt from me but without me requesting him to take any action. This person called me to a meeting after in the last minute. While he did this on his own accord, I failed to report his action to authorities as soon as possible.

April 24, 2017 Hr'g Tr. at 14. Later during the proceeding, Magistrate Judge Peck stated, "I'm not sure I heard anything about an affirmative step to conceal. Can you address that, Mr. Potik. What did you do to conceal the act?" Potik's counsel responded, "Your Honor, that was when Mr. Potik allocated to that the person called him to a meeting at the last minute, that he affirmatively went to that meeting, and that helped conceal the crime." Tr. at 16. Magistrate Judge Peck recommended that I accept Potik's plea, but I declined to do so because there was no

2

basis to conclude that Potik's attendance at the meeting as described constituted an affirmative act of intentional concealment.

On May 23, 2017, Magistrate Judge Peck issued an order instructing the parties to "address, with citation to appropriate case law, and a proffer as to what additional fact Mr. Potik is prepared to allocute to at a supplemental plea hearing, to satisfy the statutory elements of deliberately taking affirmative steps to conceal the crime." Dkt. No. 13. On May 30, 2017, counsel for Potik submitted a letter that proposed a "factual allocution" that "we submit adequately satisfies the affirmative concealment element." The proposed allocution was as follows:

> In the summer of 2015, in the Southern and Eastern Districts of New York, I became aware of an individual that was attempting to collect debt by extortionate means. The $20,000 debt was owed to me by a third party from a prior business deal. The person who attempted to collect the debt did so after learning of the debt from me but without me requesting him to take any action. The person called me to a meeting at the last minute. While he did this on his own accord, I failed to report his actions to authorities as soon as possible. **In addition, the victim had texted me asking who is this guy trying to get money out of me? In an effort to conceal the crime, I deleted the text so that there wouldn't be a record of it.**

Dkt. No. 14 (emphasis in original). I found this submission troubling because it gave the appearance of a lawyer's contrivance rather than a candid allocution by the defendant himself. On July 7, 2017, I cancelled all scheduled proceedings before Magistrate Judge Peck and ordered the parties to appear for a conference to discuss the matter.

After holding that conference and receiving supplemental submissions from the parties, I held a second plea proceeding on August 21, 2017. At that proceeding, Potik stated:

> In the summer 2015, in the Eastern District of New York, I became aware of an individual that was attempting to collect debt of extortionate means, $20,000 debt was owed to me by a third party from a prior business deal. The person who attempt[ed] to collect the debt did so after learning of the debt from me, but [without] me

3

> requesting him to take any action. The person told called me for a meeting at the last minute. While he did this on his own accord, I failed to report his action to authorities as soon as possible.
>
> In addition, the victim has texted me asking, "Who is the guy trying to get money out of me?" In an effort to conceal the crime, I deleted the texts, and in the meeting I saw and heard this person try to collect the debt by verbally yelling.

August 21, 2017 Hr'g Tr. at 20. After Potik made this prepared statement, additional facts emerged as Potik responded to questioning from the Court.

Potik made an interest-free loan in the amount of $20,000 to a man named Armand by writing a check to the name of Armand's wife. Potik did not know Armand's last name. Potik had not done business with Armand before, but knew him from the "neighborhood." Armand requested the loan to purchase vehicles that had been damaged by Hurricane Sandy, refurbish the cars, and then turn a profit by reselling them. If the venture was successful, Potik hoped to see a return as well, but this was not a condition of the loan, and no specific amount of repayment was discussed. There was no date for repayment, no provision for interest, and no terms and conditions; Potik loaned this money to Armand on a "handshake." Tr. 21-26.

After six months had passed, Armand had not paid back the loan, even though it was Potik's understanding that Armand had sold the cars. Tr. 26. A "bad man" from the community named Boris Nayfeld then became aware of Potik's transaction with Armand. Tr. 27. When asked by the Court how Nayfeld became aware of this transaction, Potik's response was ambiguous, until Potik's counsel interjected that Nayfeld was present when Potik asked Armand during a phone call to repay the loan. Potik's counsel further explained that Nayfeld, Potik and Armand then held a meeting during which Nayfeld "yelled" at Armand. Tr. 28. A few days later, another meeting between Nayfeld and Armand took place. Nayfeld told Potik not to

4

attend this meeting, but an unidentified person called Potik and told him to come. Armand brought 20 people to this meeting, presumably as a show of force, and "this was the end of it." Tr. 29. Armand has not repaid the loan.

At some point, Armand sent Potik a text message asking who Nayfeld was. Potik responded with a text explaining that Nayfeld heard that Armand owed Potik money. Tr. 30. The Court and Potik then had the following exchange:

> THE COURT: You erased the text?
> THE DEFENDANT: Yes, I erased the text.
> THE COURT: Do you always erase texts?
> THE DEFENDANT: Sometimes, yes. This text I erased.
> THE COURT: Do you save any texts?
> THE DEFENDANT: I didn't. I erased the text.
> THE COURT: Listen to my question. Don't guess. Do you typically save the texts that come on your phone?
> THE DEFENDANT: I erased this text.
> THE COURT: You erased the text?
> THE DEFENDANT: Yes.
> THE COURT: I suppose you do that for all texts?
> THE DEFENDANT: No.
> THE COURT: No? Some you save?
> THE DEFENDANT: Yeah.
> THE COURT: What?
> THE DEFENDANT: I save, but this one I erased.
> THE COURT: Why did you erase it?
> THE DEFENDANT: Because I didn't want -- not nice.
> THE COURT: What is not nice?
> (Off-the-record discussion)
> THE DEFENDANT: To get rid of it.
> THE COURT: What is not nice?
> THE DEFENDANT: Yeah, to get rid of it.
> THE COURT: Why wouldn't you want to save it?
> THE DEFENDANT: I didn't want to save it. He was not talking nice, and I didn't like it, this whole conversation, that is why I erased it.
> THE COURT: Anything else?
> THE DEFENDANT: No.

Tr. 30-31. Following Potik's allocution, I deferred decision on whether to accept his plea.

5

## DISCUSSION

"It is well established ... that a defendant has 'no absolute right to have a guilty plea accepted.'" *United States v. Severino*, 800 F.2d 42, 45 (2d Cir. 1986) (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)). "A trial judge is not required to accept every constitutionally valid [i.e., knowing, voluntary, and intelligent] guilty plea merely because a defendant wishes so to plead, and may reject a plea in exercise of sound judicial discretion." *Id.* (internal quotation marks and citations omitted). As required by the Federal Rules of Criminal Procedure, "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). "[I]f the court has reasonable grounds for believing that acceptance of the plea would be contrary to the sound administration of justice, it may reject the plea. One such ground, of course, is the defendant's failure to 'satisfy [the court] that there is a factual basis for the plea.'" *Severino*, 800 F.2d at 46 (quoting Fed. R. Crim. P. 11).

I decline to accept Potik's plea because there is no credible factual basis for it.

"The elements of Misprision of Felony are 1) the principal committed and completed the alleged felony; 2) defendant had full knowledge of that fact; 3) defendant failed to notify the authorities; and 4) defendant took steps to conceal the crime." *United States v. Cefalu*, 85 F.3d 964, 969 (2d Cir. 1996). The fourth element – intentional concealment – is essential to this crime because of the legal presumption that ordinary citizens do not have an affirmative obligation to report crimes that they become aware of. Absent the element of concealment, misprision of felony would impose such an obligation.

Historically, before the advent of modern police forces, "the common law recognized a duty to raise the 'hue and cry' and report felonies to the authorities." *Branzburg v. Hayes*, 408 U.S. 665, 696 (1972). Under this English common law, "a conviction for misprision of felony required no affirmative act of concealment; a person could be guilty of the offense for a [m]ere failure or refusal to disclose the existence of a felony." Christopher Mark Curenton, *The*

6

*Past, Present, and Future of 18 U.S.C. § 4: An Exploration of the Federal Misprision of Felony Statute*, 55 Ala. L. Rev. 183, 184 (2003) (internal quotation marks omitted).

That is not the standard under 18 U.S.C. § 4. As one commentator explains, "historical [courts] started with the assumption that an ordinary citizen had a duty to control crime, and they questioned whether the citizen failed in that duty," whereas the "modern cases assume the duty rests with law enforcement, and they question whether the citizen interfered with that duty." Curenton, *supra*, at 186. Consequently, "[v]iolation of the misprision statute additionally requires some positive act designed to conceal from authorities the fact that a felony has been committed." *United States v. Davila*, 698 F.2d 715, 717 (5th Cir. 1983). As the Supreme Court has explained, misprision of felony is "the concealment of a felony 'which a man knows, but never assented to . . . (so as to become) *either principal or accessory*.'" *Branzburg v. Hayes*, 408 U.S. 665, 696 (1972) (citation omitted) (emphasis added). The statute thus "require[s] both knowledge of a crime and some affirmative act of concealment or participation." *Id.* n.36.

For this reason, although misprision of felony and accessory after the fact are separate federal crimes, *compare* 18 U.S.C. § 3, *with* 18 U.S.C. § 4, "[p]robably most instances of misprision involve, in actuality, being an accessory after the fact." *United States v. Daddano*, 432 F.2d 1119, 1129 (7th Cir. 1970); *see also State v. Michaud*, 150 Me. 479, 491 (Me. 1955) (Webber, J., concurring) (noting that "the practical result of requiring the pleading of positive acts would be to destroy any distinction between misprision of felony and the crime of being accessory after the fact."). Indeed, the cases in which defendants have been found guilty of misprision of felony almost always involve conduct that would also support a conviction for accessory after the fact. *See United States v. Gravitt*, 590 F.2d 123, 126 (5th Cir. 1979) (defendant took affirmative action to conceal a felony where defendant transported bank robbers "to the place where the duffel bag with clothing, guns and money had been stashed" after the

7

robbery committed and then after "the bag and its contents had been retrieved, he returned to the apartment where the loot was divided."); *United States v. Stuard*, 566 F.2d 1 (6th Cir. 1977) (defendant committed act of concealment by removing stolen whiskey from truck and replacing contraband with sandbags); *United States v. Daddano*, 432 F.2d 1119 (7th Cir. 1970) (defendant committed act of concealment by forcing co-conspirators to take a lie detector test to discourage them from contacting authorities); *Lancey v. United States*, 356 F.2d 407, 410 (9th Cir. 1966) ("A harboring of the criminal, with full knowledge, may be the positive act required to constitute the required concealment.").

Applied here, the fact that Potik's allocution would not support a charge of accessory after the fact raises serious questions about whether accepting this plea would be appropriate. His allegedly wrongful conduct – the deletion of certain texts – may have had the effect of concealing criminal activity, but Potik's allocution is far from clear that it was intentionally undertaken for that purpose.

At the August 21, 2017 proceeding, Potik initially stated that he deleted his texts with Armand "in an effort to conceal the crime." This statement was prepared by his lawyer, as this language was lifted directly from the proposed allocution that Potik's lawyer had previously submitted to Magistrate Judge Peck. Potik's prepared statement was conclusory and lacked credibility. When I asked Potik additional questions about these deleted texts, Potik's response was evasive and ambiguous, and at no point did he state that he deleted the texts in order to conceal Nayfeld's alleged extortion scheme. Instead, he stated only that "I didn't want to save it. [Armand] was not talking nice, and I didn't like it, this whole conversation, that is why I erased it."

This answer does not provide a factual basis for the element of intentional concealment because Potik's stated reason for deleting the texts had nothing to do with his desire to destroy evidence of Nayfeld's extortion scheme. "Violation of the misprision statute

8

additionally requires some positive act designed to conceal from authorities the fact that a felony has been committed." *United States v. Davila*, 698 F.2d 715, 717 (5th Cir. 1983); *see also Bratton v. United States*, 73 F.2d 795, 797 (10th Cir. 1934) (misprision of felony requires "some affirmative act of concealment, such as suppression of the evidence, harboring of the criminal, intimidation of witnesses, or other positive act *designed* to conceal from the authorities the fact that a crime had been committed." (emphasis added)). Potik's own statements make clear that his decision to delete the texts was not "designed" to conceal the alleged extortion scheme, but was motivated by his dislike of Armand's text.

Furthermore, many of Potik's responses to the Court's questions were unintelligible and lacking in credibility. The manner in which Potik loaned $20,000 to Armand, for example, lacks plausibility, and Potik's description of the circumstances in which Nayfield became involved in Potik's transaction with Armand leaves the listener with the sense that large parts of the narrative were purposefully obfuscated. *See Severino*, 800 F.2d at 46 (affirming rejection of plea where district court did not find factual basis for plea because defendant was not a "credible witness."); *United States v. James*, 520 F. App'x 41, 44 (2d Cir. 2013) (affirming district court's rejection of plea where defendant's answers to court's questions were "confused" and "muddled."). I find Potik's story not sufficiently credible to support his guilty plea.

A defendant is permitted to plead guilty to a lesser offense where the Government offers him that choice, but the factual basis for that plea cannot be manufactured by the lawyers involved in the case; it must be based in reality. That basis in reality is absent in this case.

## CONCLUSION

For these reasons, I reject Potik's plea of guilty. A pre-trial conference shall be held on October 10, 2017 at 11:00 a.m.

SO ORDERED.

Dated: September 26, 2017
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge